IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY SHAFFER, etc.,

                Plaintiff,                Case No. 3:09 CV 2068

-vs-

                                          <u>MEMORANDUM  OPINION</u>

CSX TRANSPORTATION, INC.,

                Defendant.

KATZ, J.

This matter is now before the Court on the motion of the Defendant, CSX Transportation, Inc. (Doc. 14), for summary judgment. Plaintiff has filed a response (Doc. 16), to which Defendant has filed a reply (Doc. 17). The motion for summary judgment will be granted.

**I. Background**

At about 2:50 AM in the early morning of April 10, 2008, Bobby Shaffer, Plaintiff's decedent, and Ray Ankney were walking along railroad tracks in Defiance, Ohio that were owned and operated by Defendant, at about milepost BI 87.5. Both had elevated confirmed blood alcohol levels. The tracks they were walking along run parallel to one other; one (Track 1) is north of the other (Track 2). There is a slight bend in the tracks just west of milepost BI 87.5

At the time Shaffer and Ankney were walking along Track 1, CSX Train Q35109 was traveling westbound on Track 2. At the same time, CSX Train Q11409 was traveling eastbound on Track 1. Both trains were approaching milepost BI 87.5. The conductor of Q35109 noticed Shaffer and Ankney walking outside Track 1 as that train passed by, and observed Ankney waving at the train as it passed. The conductor gave a short blast of the train's whistle to warn the two away from the tracks. The conductor of Q35109 also notified Q11409 of the presence of Shaffer and Ankney walking north of Track 1 just ahead of Q11409's position. This communication was

received by Q11409's conductor and engineer just as the heads of two trains were passing each other.

Q11409's engineer turned on the train's bright headlight and applied the horn to alert the persons on the track of the train's presence; the engineer also maintained a lookout ahead. Additionally, Q11409's ditch lights were turned on at the time, and its bell was ringing. As Q11409 rounded the curve in the tracks, the engineer and conductor caught sight of the two individuals walking inside of the rails of Track 1 ahead of the train.

As Q11409 approached, Ankney looked over his shoulder and became aware of the train coming up behind the him. He moved outside the rails. Shaffer, who appeared to be staggering, remained inside the rails. Ankney then walked back into the path of the train and reached out to pull Shaffer away from the tracks just as the train was reaching their location. The train, which was traveling about 40 mph at the time, struck Shaffer and Ankney, killing both. Subsequently, the train's brakes were applied and the lead engine stopped. The crew immediately contacted their dispatcher to report the incident. Less than five seconds elapsed from the time the crew of Q11409 first spotted the pair on the tracks to the time the accident occurred.

The administratrix of Shaffer's estate now brings claims against Defendant for negligence and wrongful death. This case was removed here from Defiance County Common Pleas Court due to diversity of citizenship.

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id*. at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the

judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

In moving for summary judgment, Defendant argues that undisputed evidence shows that it satisfied its duty to the Plaintiff's decedent and complied with the applicable standard of care. The Court agrees.

Under Ohio law, it is the duty of the train's engineer to keep a lookout on the track ahead of the train, and, "if while doing so, his eye takes in a person approaching the track, he may assume that such person will keep away from the track until the train passes, but when it becomes evident that such person will not keep off the track, it becomes the duty of such engineer to use ordinary care to prevent injury to that person." *Nye v. CSX Transp. Inc.*, 437 F.3d 556, 567 (6th Cir. 2006) (quoting *Cates v. Consolidated Rail Corp.*, 100 Ohio App.3d 288 (1995)). Both parties agree on the applicable legal standard. Railroad employees in charge of a train, having given all the usual and proper signals to warn persons of their approach, are not generally required to slacken the speed or stop the train absent circumstances indicating such persons will not or cannot

get out of danger. See *Higgins v. Baltimore & O. R. Co.*, 16 Ill. App.2d 227, 231 (1958) (rejecting a rule that "a train must make an emergency stop every time a pedestrian is seen on or near the tracks."). "If the trespasser is an adult and apparently in possession of his faculties, however, it has been held that the engineer is entitled to expect the person to hear the warning signals and remove himself from danger." *Maxwell v. Illinois Central Gulf R.R.*, 513 So.2d 901, 905 (Miss. 1987). Therefore, "the speed of the train need not be slackened until circumstances show that the person will probably not seek safety in time." *Id*.

In the present case, it is not disputed that Train Q11409 did indeed give the ordinary signals to alert pedestrians ahead of its presence upon hearing of the pedestrians on the tracks. Q11409's engineer turned on the train's bright headlight and applied the horn, and the train had its ditch lights on and its bell ringing. Ankney and Shaffer appeared to be alert adults in possession of their faculties as Train Q35109 passed them, not individuals in a state of "helpless peril." Therefore, the crew of Train Q11409, hearing of their presence on the tracks, was entitled to expect that they would move away upon hearing the loud, blaring signals of an oncoming train. Contrary to Plaintiff's suggestion, then, the engineer of Q11409 was not required to slow or stop the train immediately upon hearing that Ankney and Shaffer were on or near the tracks in order to satisfy its duty of ordinary care.

Arguably, the crew of Q11409 would have had an obligation to attempt a stop upon rounding the curve in the tracks and seeing Ankney and Shaffer ahead, if such a stop was feasible. But there is no evidence in the record indicating that Q11409 could have safely and efficaciously made an emergency stop within the five second interval between the crew's spotting the two pedestrians and the moment of impact. See *Petre v. Norfolk Southern Ry. Co.*, 485 F.Supp.2d 518,

538-539 & n. 20 (N.D. Ohio 2006) (granting summary judgment where there was "nothing to support an inference that the engineer, in the exercise of ordinary care, could have slowed the train sufficiently to turn this accident from a fatality to a near miss" where the train's crew first saw the decedent four seconds before impact) (internal quotation marks omitted).[1]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 14) is granted.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

[1] The Court will not consider the Plaintiff's unsworn expert report at this stage in the proceedings, as doing so would be improper. See *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 488 (6th Cir. 2008) ("As we have explained, however, that expert's report was an unsworn letter, and the district court should not have considered it."). Although Plaintiff suggests that the train's crew should have used a different whistle sequence, Plaintiff cites nothing indicating a different whistle sequence would have acted to mitigate or avert the collision.